**NEW YORK STATE ELECTRIC & GAS CORPORATION, Petitioner,**

v.

**SECRETARY OF LABOR and Occupational Safety and Health Review Commission, Respondents.**

No. 604, Docket 95–4073.

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1995.

Decided July 3, 1996.

James S. Gleason, Binghamton, New York (Leslie Prechtl Guy, Hinman, Howard & Kattell, Binghamton, New York, of counsel), for Petitioner.

Charles F. James, Washington, D.C. (Thomas S. Williamson, Jr., Solicitor, Joseph M. Woodward, Associate Solicitor for Occupational Safety and Health, Barbara Werthmann, Counsel for Appellate Litigation, U.S. Department of Labor, Office of the Solicitor, Washington, D.C., of counsel), for Respondents.

Before NEWMAN, Chief Judge, and FEINBERG and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge.

Before us is an appeal from a decision and order of the Occupational Safety and Health Review Commission (Commission), dated March 24, 1995. The decision affirmed two citations and a $1,500 penalty issued against petitioner New York State Electric and Gas Corporation (NYSEG, employer or petitioner) arising from a violation of the Occupational Safety and Health Act (OSH Act or Act), 29 U.S.C. §§ 651–678 (1994), from the failure of one of its employees to use safety equipment while operating a jackhammer.

In assuming that the employer, rather than the Secretary, had the burden of proof

regarding its knowledge of a safety violation, the Commission may *not* be accused of that "foolish consistency [which] is the hobgoblin of little minds," Ralph W. Emerson, *Self-Reliance, in The Best of Ralph Waldo Emerson* 119, 127 (1941), but it may be accused of an *unwise inconsistency,* sowing seeds of doubt in a field of the law that may already be described as a patchwork of confusion. Further, although the Commission's ruling did not in so many words impose absolute liability on the employer, it implicitly applied a *per se* rule of liability based on a single occurrence of unsafe conduct by a NYSEG employee. Adoption of such a standard is inconsistent with the OSH Act.

## BACKGROUND

### A. *Facts*

On the morning of July 30, 1991 NYSEG employees Jim Webb, a first-class gas fitter, and Raymond Price, an equipment operator, drove in a company truck to the intersection of Front Street and Valley Street in Binghamton, New York. Their mission was to "tie in" a section of newly laid natural gas pipe. Upon arrival Webb put out cones and signs to protect the work site from vehicular traffic, while Price unloaded a backhoe to excavate the area surrounding the pipe. Because the existing break in the pavement was not wide enough for the tie-in, Price used a jackhammer from the truck to widen it.

While Price was so engaged, William Marzeski, an Occupational Safety and Health Administration (OSHA) compliance officer, happened to be driving through the intersection, and noticed that Price was operating the jackhammer without protective eyewear. He stopped and asked Price to identify his immediate supervisor, and was told that Webb was the crew leader. Marzeski then identified himself to Webb as an OSHA compliance officer and explained that Price was not wearing safety glasses. Webb agreed that Price should have been using protective goggles. Upon being further questioned, Price said he was not wearing steel-toe shoes either. At Webb's behest, Price then retrieved goggles and protective toe covers from the truck, put the equipment on, and resumed work.

### B. *Citation and Complaint*

As a result of the compliance officer's report, the respondent Secretary of Labor issued a citation alleging a violation of 29 C.F.R. § 1926.28, a regulation the Secretary had promulgated as head of OSHA. The regulation makes employers "responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates a need for using such equipment to reduce the hazards to the employees." To show that the Secretary's regulations indicated a need for relevant safety gear, the citation also referred to 29 C.F.R. § 1926.102(a)(1) (1995), which requires that employees be provided with eye and face protection equipment when there is a potential for eye or face injury. The allegations set forth in the citation stated that Price had been "exposed to eye and toe injuries while operating ... [a jackhammer] without using protective eye equipment and safety-toe footwear."

The Secretary subsequently filed a complaint with the Commission amending the citation and asserting a slightly different theory of liability. With respect to the lack of toe protection, the Secretary now asserted a violation of 29 C.F.R. § 1910.132(a) (1995), a standard requiring the use of "[p]rotective equipment, including personal protective equipment for eyes, face, head, and extremities ... wherever it is necessary by reason of hazards ... encountered in a manner capable of causing injury...." With respect to Price's failure to use eye protection, the complaint additionally alleged a violation of the "general duty clause" of the OSH Act, 29 U.S.C. § 654(a)(1).

### C. *ALJ's Hearing and Decision*

A hearing was held before an Administrative Law Judge (ALJ) pursuant to 29 U.S.C. § 659(c). The Secretary's case consisted primarily of Marzeski's testimony. He related his observations and conversation with Price and Webb at the work site on July 30, 1991. NYSEG called John Durfee, its manager of industrial relations for health and safety,

Jack Jones, the supervisor for the Binghamton area in July of 1991, and John Hrywnak, the gas supervisor in charge of the Webb–Price crew when the citation was issued. Petitioner's witnesses described NYSEG's safety program, which included a rule requiring employees to wear eye and foot protection equipment when cutting pavement with a pneumatic tool.

Because Price and Webb were both newly hired employees of NYSEG—it had taken over their former employer's Binghamton business a few months earlier—they had been required to attend an orientation meeting covering safety practices and rules. As part of petitioner's safety program, safety meetings were held monthly to discuss selected topics. Supervisors were obligated to check work sites once or twice a day to ensure that safe work practices were being observed. When safety violations were discovered, they were corrected immediately, and NYSEG disciplined those responsible, imposing progressive discipline for further violations of its safety rules. In addition to the daily supervisor checks, Jones conducted quarterly safety audits of each work crew. Hrywnak testified it was company policy for crew members to report safety lapses to "the lead person on the crew"—in this case, Webb.

Following the hearing the ALJ sustained both violations alleged in the amended citation. With respect to the § 1910.132(a) violation (failure to wear protective footwear), the ALJ noted that the Secretary has the burden of showing, *inter alia,* that the employer knew or could have known of the violation of the standard requiring the wearing of protective equipment. The hearing officer also observed that such knowledge or constructive knowledge may be imputed to the employer through the employer's supervisory personnel. Here Webb was the "lead man" of the two-person crew at the site, and though he was not actually aware of the safety violation, he would have known had he exercised reasonable diligence. Thus, the ALJ concluded that Webb—and NYSEG, by imputation—had constructive knowledge of the safety violation.

The ALJ rejected the defense of "unpreventable employee misconduct" for two alternative reasons. He concluded that if Webb was indeed a supervisory employee, he did not do enough to discover Price's non-compliance; but, if Webb was not a supervisor, NYSEG's safety supervision was inadequate. Either way, NYSEG violated the relevant safety standards. The ALJ ruled on the "general duty clause" violation (failure to wear protective eyewear) in the same fashion.

### D. *The Commission's Decision*

Reviewing the ALJ's decision, the Commission determined that the citation could not appropriately be based on the statutory "general duty clause." The Secretary may not rely on this general clause when it is "preempted" by a more specific standard, in this case 29 C.F.R. § 1926.28(a), which requires an employee to wear "appropriate personal protective equipment" where there is a need. The Commission therefore amended the complaint *sua sponte* to restore the original basis for the eye safety violation set forth in the citation—29 C.F.R. § 1926.28(a).

The Commission agreed with the ALJ's conclusion that Webb had constructive knowledge of Price's safety violations. It affirmed the hearing officer's findings that Webb was the "lead man" on the crew and reasonably should have known of the violation because he and Price were in close proximity to one another and the violations were readily observable. Although NYSEG challenged the ALJ's finding that Webb held a supervisory position for purposes of imputing knowledge to his employer, the Commission declined to reach that question. Instead it adopted the ALJ's reasoning concerning NYSEG's affirmative defense and found that if Webb was a supervisor, his constructive knowledge could be imputed to NYSEG; if not, then NYSEG failed to provide adequate safety supervision. Ruling in this fashion, the Commission determined that the Secretary carried his burden and proved that the petitioner had constructive knowledge of the safety violation regardless of whether Webb was or was not a supervisor.

With respect to the employer's defense of unpreventable employee misconduct, the Commission further held that NYSEG failed to demonstrate it enforced its safety rules effectively. The Commission declined to follow cases from the Third and Tenth Circuits placing the burden of proof for employee misconduct on the Secretary. Again, it stated that whether or not Webb was a supervisor was not relevant: in either case, the employer had failed to make sufficient efforts to detect violations of the safety rules. Were Webb not a supervisor, but simply Price's co-worker, then supervision was inadequate because it was limited to brief, twice-daily visits to work sites; if Webb was a supervisor, then NYSEG failed to show it did enough to prevent safety violations, including adequate training of its supervisors. The Commission observed that NYSEG's voluminous evidence regarding its safety programs dealt primarily with electrical utility operations rather than the natural gas operations in which Price and Webb were engaged. It declared that NYSEG had violated 29 C.F.R. § 1926.28(a) and § 1910.132(a) for the eye and foot safety violations respectively and affirmed the $1,500 assessed penalty for these violations. NYSEG appeals these determinations.

We set aside the Commission's determination, in part, affirm, in part, and remand the case to the Commission for further proceedings.

## DISCUSSION

We address several arguments advanced by petitioner. The first point we consider is a procedural one: NYSEG's insistence that the Commission acted beyond its authority when it amended, *sua sponte,* the portion of the complaint dealing with Price's failure to use eye protection. Next, we discuss the following questions: whether the Commission improperly required NYSEG to carry the burden of proving the adequacy of its safety program, instead of placing that burden on the Secretary; whether the Commission inappropriately concluded that NYSEG constructively knew of Price's safety violation; whether knowledge could be imputed to NYSEG through its employee Webb; and whether NYSEG should be absolved of liabil-

ity because Price's conduct was unforeseeable. Before analyzing these issues it is useful to set forth briefly the statutory and regulatory background that provides a backdrop for the discussion of worker safety.

### Statutory and Regulatory Background

The OSH Act of 1970, Pub.L. No. 91–596, 84 Stat. 1590, was a "revolutionary piece of labor legislation," *REA Express, Inc. v. Brennan,* 495 F.2d 822, 825 (2d Cir.1974), both remedial and preventative, the broad purpose of which was to assure safe and healthful working conditions for workers. *See* OSH Act § 2(b), 29 U.S.C. § 651(b); *Brennan v. OSHRC (Underhill Const. Corp.),* 513 F.2d 1032, 1038 (2d Cir.1975). Nonetheless, it was not the legislative purpose to impose absolute liability on employers for safety violations, *REA Express,* 495 F.2d at 826, or to require safety measures beyond those that are reasonable and feasible, *Horne Plumbing and Heating Co. v. OSHRC,* 528 F.2d 564, 569 (5th Cir.1976).

 Congress provided for the promulgation and enforcement of workplace standards through a comprehensive regulatory scheme. Regulatory responsibilities under the Act are divided between two administrative entities. *See Martin v. OSHRC,* 499 U.S. 144, 151–52, 111 S.Ct. 1171, 1176–77, 113 L.Ed.2d 117 (1991) (describing the "unusual regulatory structure established by the Act"). The Secretary of Labor exercises rulemaking and enforcement powers, establishing the standards, investigating employers to discover non-complying conduct, issuing citations, and assessing monetary penalties. OSH Act §§ 6, 8–10, 29 U.S.C. §§ 655, 657–59. The Commission exercises adjudicative powers and serves as the "neutral arbiter" between the government regulatory body and an employer. *Cuyahoga Valley Ry. v. United Transp. Union,* 474 U.S. 3, 7, 106 S.Ct. 286, 288, 88 L.Ed.2d 2 (1985) (per curiam).

 When an employer contests a citation, the Commission must hold a hearing, make factual findings, and issue an order either affirming, modifying, or vacating the Secretary's citation. OSH Act § 10(c), 29 U.S.C. § 659(c). An appeal from a Commis-

sion order is reviewed directly by the Courts of Appeals. OSH Act § 11(a), 29 U.S.C. § 660(a). On review, factual determinations must be upheld—as generally is true on appeal from an administrative agency's adjudicative decision, *see Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)—"if supported by substantial evidence on the record considered as a whole." OSH Act § 11(a), 29 U.S.C. § 660(a). When the resolution of a question depends upon an interpretation of the Act's substantive provisions and Congress has not clearly expressed its aim, we defer to a permissible agency reading of the Act. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *cf. Martin,* 499 U.S. at 152–53, 111 S.Ct. at 1176–77 (deference owed Secretary's interpretation of OSHA regulation when it differs from that of the Commission). We only set aside a Commission order when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988); *Bancker Const. Corp. v. Reich,* 31 F.3d 32, 34 (2d Cir.1994) (per curiam).

To implement the Act's legislative scheme, Congress imposed two duties on employers. First, an employer has a general duty to "furnish ... employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to [its] employees." OSH Act § 5(a)(1), 29 U.S.C. § 654(a)(1). Second, an employer has a duty to comply with the more specific safety and health standards promulgated under the Act. OSH Act § 5(a)(2), 29 U.S.C. § 654(a)(2). In the case at hand, the Commission's order imposing liability on NYSEG is based upon its failure to comply with the latter "special duty."

### I Amendment of the Complaint

■ We turn now to the issues raised, and consider NYSEG's procedural contention first. The question is whether the Commission should have dismissed, rather than amended, that part of the complaint alleging a violation of the Act's general duty clause

stemming from Price's failure to use protective eyewear. The Commission adopted petitioner's contention that the general duty clause was an inappropriate basis for the citation because a specific standard—29 C.F.R. § 1926.28, the standard invoked in the original citation—applied to Price's conduct. But instead of dismissing, the Commission proceeded to amend the complaint itself, reading the complaint as though it had asserted a special duty clause violation. Petitioner believes such *sua sponte* amendment was error.

■ Proceedings before the Commission generally are governed by the Federal Rules of Civil Procedure. 29 U.S.C. § 661(g). Under the Federal Rules, pleadings are not ends in themselves, but are simply the means by which a case is presented to a tribunal. *See Usery v. Marquette Cement Mfg. Co.,* 568 F.2d 902, 906 (2d Cir. 1977). In an administrative proceeding, which of course is the forum for the instant case, pleadings are liberally construed and easily amended. *Id.* And, because such matters are conducted informally, the form a pleading takes does not loom large, *see* 1 Kenneth C. Davis, Administrative Law Treatise § 8.04, at 523 (1st ed.1958) (administrative pleadings are unimportant). Further, under Fed.R.Civ.P. 15(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In assessing whether the pleadings should conform to the proof, the pivotal question is whether prejudice would result. *See Marquette Cement,* 568 F.2d at 907.

■■ Petitioner tells us that the applicability of the general duty clause was hotly disputed throughout the appeal before the Commission and that the Secretary never moved to amend the complaint at the hearing before the ALJ. However, a party cannot normally show that it suffered prejudice simply because of a change in its opponent's legal theory. Instead, a party's failure to plead an issue it later presented must have disadvantaged its opponent in presenting its case. *See D. Federico Co. v. New Bedford Redevelopment Auth.,* 723 F.2d 122, 126 (1st

Cir.1983) ("The fact that [a Rule 15(b) amendment] involves a change in the nature of the cause of action, or the legal theory of the action, is immaterial so long as the opposing party has not been prejudiced in presenting its case."). Here, NYSEG does not dispute that the material fact issues to be tried would have been exactly the same regardless of whether or not the general duty clause was invoked. *Cf. Spancrete Northeast, Inc. v. OSHRC,* 905 F.2d 589, 593 (2d Cir.1990) (29 C.F.R. § 1926.28(a) is analogous to the general duty imposed by the Act). Hence, NYSEG was not prejudiced by the change in the theory of the safety infraction alleged against it. Nor is it helpful to the employer that the Secretary failed to move to amend because Rule 15(b) requires no motion or formal amendment of the pleadings. *Cf. Howell v. Cataldi,* 464 F.2d 272, 275 (3d Cir.1972) (under Rule 15(b), court "look[s] beyond the pleadings").

Petitioner maintains, in addition, that allowing such *sua sponte* amendments would promote "sloppy drafting" by the Secretary, and that it would eliminate the need for safety standards by allowing the Secretary to plead a general duty violation in every case. These concerns are misplaced. First, although in the instant case the relevant standard is general in nature and raises the same issues as would the special duty clause, proving a general duty violation ordinarily will be more burdensome than proving a special duty violation. The former requires the Secretary to demonstrate that an employer exposed its employees to a "recognized" hazard likely to cause death or serious physical harm, and that the employer could have taken feasible steps to avoid the violation. *See Carlyle Compressor Co., Div. of Carrier Corp. v. OSHRC,* 683 F.2d 673, 676 (2d Cir. 1982). The latter, in contrast, only requires proof that the employer's knowing failure to comply with a relevant safety standard exposed employees to an unsafe condition. Thus, contrary to NYSEG's concerns, the Secretary has an obvious incentive to plead a violation of the special duty clause.

Second, imprecise pleading is only tolerated where it does not prejudice the employer and has no effect on the outcome of the case.

In the absence of prejudice, poorly pled theories in administrative proceedings are therefore without consequence. NYSEG fully litigated all the issues relevant to a special duty violation. We therefore reject its argument that the Commission improperly read the complaint as asserting 29 C.F.R. § 1926.28(a) as a basis for liability.

## II Employer's Knowledge and Adequacy of Safety Program

█ In carrying out the adjudicatory role assigned to it by the Act, the Commission has held that the Secretary's *prima facie* case to show a violation of the special duty clause consists of four elements: (1) a relevant safety standard applies, (2) the employer failed to comply with it, (3) employees had access to the violative condition, and (4) the employer had knowledge or constructive knowledge of the condition. *See Wray Electric Contracting, Inc. v. Secretary of Labor,* 9 O.S.H. Cas. (BNA) 2126, 633 F.2d 220, (6th Cir.1980), *aff'd in part, rev'd in part, sub nom. Astra Pharmaceutical Prods., Inc. v. OSHRC,* 681 F.2d 69 (1st Cir.1982); *Sal Masonry Contractors Inc.,* 1992 O.S.H.D. (CCH) ¶ 29,673, at 40,205, 40,206 (Review Comm'n); *see Carlisle Equip. Co. v. Secretary of Labor,* 24 F.3d 790, 792–93 (6th Cir. 1994).

█ The fourth element, the knowledge requirement, may be satisfied by proof either that the employer actually knew, or "with the exercise of reasonable diligence, could have known of the presence of the violative condition." *Secretary of Labor v. Pride Oil Well Serv.,* 15 O.S.H. Cas. (BNA) 1809, 1814 (Review Comm'n 1992); *see* 29 U.S.C. § 666(k) ("Serious violation" cannot exist when "the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."); *Carlisle,* 24 F.3d at 793. Knowledge or constructive knowledge may be imputed to an employer through a supervisory agent. *See Dover Elevator Co.,* 1993 O.S.H.D. (CCH) ¶ 30,148, at 41,474, 41,480 (Review Comm'n); *Niagara Mohawk Power Corp.,* 7 O.S.H. Cas. (BNA) 1447, 1449 (1979). Further, constructive knowledge may be predicated on an employer's failure to establish an adequate

program to promote compliance with safety standards. *See Pride,* 15 O.S.H. Cas. at 1814; *Brock v. L.E. Myers Co.,* 818 F.2d 1270, 1277 (6th Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 479, 98 L.Ed.2d 509 (1987).

The Commission has also taken the position that when the Secretary has made out a *prima facie* case of a violation, the employer may still prevail by establishing the affirmative defense of unpreventable or unforeseeable employee misconduct. *E.g., Pride,* 15 O.S.H. Cas. at 1816. This defense requires an employer to demonstrate it (1) established a work rule to prevent the violative behavior, (2) adequately communicated the rule to its employees, (3) took steps to discover non-compliance, and (4) effectively enforced safety rules when violations were discovered. *E.g., Secretary of Labor v. Nooter Constr. Co.,* No. 91–237, 1994 WL 27750, at *6 (O.S.H.R.C. Jan. 31, 1994); *Dover,* 1993 O.S.H.D. at 41,480.

We discuss the merits of this issue by analyzing petitioner's several contentions: (a) the Commission erred in requiring NYSEG to shoulder the burden of proving the adequacy of its safety program, when that issue arose as part of the Secretary's *prima facie* case; (b) there was insufficient proof that NYSEG's safety program was inadequate and, therefore, the Secretary could not show NYSEG had knowledge of the violation; (c) the evidence was insufficient to permit Webb's knowledge to be ascribed to NYSEG on the basis of his purported supervisory status, because Webb was not a supervisor and, in any event, he had no actual or constructive knowledge; and (d) even if Webb had constructive knowledge of the violation, imputation was improper because the violation was unforeseeable.

### A. Burden of Proof

We first address whether the Commission erred in placing on NYSEG the burden of proof regarding the adequacy of its safety policy. The Secretary argues that the issue need not be reached because the Commission assumed the burden was on the Secretary. If we reach the question, however, the Secretary maintains that the burden should be borne by the employer. When determining that the employer's supervision was inadequate if Webb was simply Price's co-worker and not his supervisor, the Commission adopted the ALJ's ruling with respect to NYSEG's affirmative defense that it had an adequate safety program. In other words, the Commission relied on the ALJ's discussion of whether NYSEG proved its affirmative defense instead of asking whether the Secretary proved the knowledge component of his *prima facie* case. The ALJ's ruling on the affirmative defense placed the burden of proof squarely on the employer, and nothing in the Commission's opinion suggests it thought that placement wrong, even in the very different context of proving a *prima facie* case. We must therefore address the burden-of-proof question.

We note that under the Commission's precedent, in a case like the present one, the Secretary's *prima facie* case and the employer's unpreventable conduct defense both involve an identical issue: whether the employer had an adequate safety policy. The issue arises as part of the Secretary's case because a finding of an employer's constructive knowledge may rest on a failure to implement policies adequate to prevent unsafe practices. This question is, in substance, the same as the one presented when the employer invokes the unpreventable misconduct defense: the employer can avoid liability by showing that it established and communicated a rule designed to prevent the violation, and that it reasonably monitored and enforced compliance with the rule. *Pride,* 15 O.S.H. Cas. at 1816.

NYSEG concedes that "unpreventable employee misconduct" is a defense that must be pleaded and proved by the employer. It argues, however, that the burden regarding the adequacy of the employer's safety policy must be borne by the Secretary when, as here, the issue arises as part of the Secretary's *prima facie* case. The proper allocation of the burden regarding whether a violation constituted unpreventable conduct—an issue closely related to, but not the same as, the burden-of-proof contention urged by NYSEG on this appeal—has split the Circuits. As one Justice of the Supreme Court observed, "There is a confusing patchwork of

conflicting approaches to this issue," *L.E. Myers*, 484 U.S. at 989, 108 S.Ct. at 479 (1987) (White, J., dissenting from denial of certiorari).

A sister Circuit has held that the Secretary has the burden to show an employee's act was not idiosyncratic and unforeseeable, rejecting the Commission's position that unpreventability is an affirmative defense to be established by the employer. *See Ocean Electric Corp. v. Secretary of Labor*, 594 F.2d 396, 401–02 (4th Cir.1979). *But cf. Forging Indus. Ass'n v. Secretary of Labor*, 773 F.2d 1436, 1450 (4th Cir.1985) (referring to "unforeseeable employee misconduct" as a "defense" available to the employer under the Act).

Two Circuits have held that the Secretary must disprove "unpreventable conduct" in the special situation where the alleged violative conduct is that of a *supervisor*. *See Pennsylvania Power & Light Co. v. OSHRC*, 737 F.2d 350, 358 (3d Cir.1984); *Mountain States Tel. and Tel. Co. v. OSHRC*, 623 F.2d 155, 158 (10th Cir.1980). In such cases, the usual rule that a supervisor's knowledge is imputed to the employer would make the knowledge requirement easy to prove: the non-complying supervisor obviously knew of his or her own conduct. The two Circuit decisions are bottomed, in part, on the apparent unfairness of requiring the employer to prove unforeseeability under such circumstances. *See Pennsylvania Power*, 737 F.2d at 357–58; *Mountain States*, 623 F.2d at 158. In *Capital Elec. Line Builders of Kansas, Inc. v. Marshall*, 678 F.2d 128, 130 (10th Cir.1982), the Tenth Circuit applied the same rule where the alleged OSHA violations arose from the conduct of a *non*-supervisory employee. Such view appears to be at odds with the Tenth Circuit's earlier view set forth in *Mountain States* and *Austin Bldg. Co. v. OSHRC*, 647 F.2d 1063, 1068 (10th Cir.1981), which characterized unpreventability as a defense available to the employer. *See L.E. Myers*, 818 F.2d at 1276 n. 7 (noting the discrepancy).

The majority of the Circuits have held that unpreventable employee misconduct is an affirmative defense that an employer must plead and prove. The First Circuit so held in a case involving the general duty clause, *General Dynamics Corp. v. OSHRC*, 599 F.2d 453, 459 (1st Cir.1979), as have the Fifth, Sixth, Eighth, and Eleventh Circuits in special duty cases, *H.B. Zachry Co. v. OSHRC*, 638 F.2d 812, 818 (5th Cir. Unit A Mar.1981); *L.E. Myers*, 818 F.2d at 1277; *Danco Constr. Co. v. OSHRC*, 586 F.2d 1243, 1246–47 (8th Cir.1978); *Daniel Int'l Corp. v. OSHRC*, 683 F.2d 361, 364 (11th Cir.1982).

Relying on the case law placing the burden of proving unpreventable conduct on the employer, the Secretary argues that NYSEG should also bear the burden with respect to whether it had *knowledge* of Price's conduct, at least where such knowledge is based on the inadequacy of its safety policy. As the Secretary acknowledges, and as noted above, when knowledge is based on shortcomings in the employer's safety policy, one issue raised in the *prima facie* case—the adequacy of the policy—is the same question that would arise if the employer were to raise the defense of unpreventable misconduct. The Secretary maintains that it would be illogical to require it to prove knowledge as part of its *prima facie* case when the adequacy of the safety policy is subsumed in an employer's affirmative defense.

But the fact that the employer might litigate a similar or even an identical issue as an affirmative defense does not logically remove an element from the complainant's case. The Commission has held—and the Secretary appears to have conceded in the proceedings before the Commission—that a *prima facie* case of a special duty violation includes the element of knowledge. Without explicitly adopting a new rule, the Commission effectively ignored the usual rule it has followed that the Secretary must establish by a preponderance of the evidence that the employer knew or constructively knew of the violation. The Commission's opinion does not attempt to justify such a significant departure from its established precedent, nor did the Secretary give the Commission good reasons for modifying this element of its *prima facie* case.

When an administrative agency addresses a question in an inconsistent manner, departing from a position it has previously

taken, it must make a clear statement of its new rule and articulate its reasons for making the change in order for an appellate court to conduct intelligible judicial review. *Atchison, Topeka & Santa Fe Ry. v. Wichita Bd. of Trade*, 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973); *see also Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255, 1266 (4th Cir.1974); *City of Lawrence v. Civil Aeronautics Bd.*, 343 F.2d 583, 588 (1st Cir.1965); *cf. NLRB v. Metropolitan Life Ins. Co.*, 380 U.S. 438, 442–44, 85 S.Ct. 1061, 1063–65, 13 L.Ed.2d 951 (1965) (when exercising its discretion, board must set forth the reasons for its actions).

■ Perhaps the Commission could, without violating the Act, accept the Secretary's position as a permissible one, a proposition we do not now decide. What we do hold, however, is that without an explanation of the reasons for eliminating the Secretary's burden to prove knowledge of the safety violation as part of its *prima facie* case, the burden of showing an employer's knowledge may not be shifted to an employer simply because the Secretary can assert no grounds for knowledge other than the inadequacy of the employer's safety policy. *Cf. Dunlop v. Rockwell Int'l*, 540 F.2d 1283, 1291 (6th Cir. 1976) (a change in the Commission's position on whether knowledge is an element of a non-serious violation "must be clearly stated and accompanied by a statement of the reasoning behind the change").

Contrary to the Secretary's suggestion, the view of the majority of the Circuits—that unpreventable misconduct is an affirmative defense—does not compel a holding that the employer bears the burden on the adequacy of its safety policy in this case. The Secretary must first make out a *prima facie* case before the affirmative defense comes into play. *See L.E. Myers*, 818 F.2d at 1277. Knowledge may be proved in a variety of ways. The Commission might choose to adopt a rule akin to the shifting burdens of proof used in discrimination cases, *see, e.g., Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), with the ultimate burden of showing employer knowledge remaining with the Secretary; or, the

Commission might select some other rule. We think its experience and expertise in the occupational safety field place it in the best position to formulate a workable rule, one it must then apply in a consistent fashion.

Without deciding whether a given rule would be permissible under the OSH Act, we simply hold that—absent a clear and reasoned explanation for changing its prior rule—the burden of proof regarding the issue of knowledge may not be shifted to the employer even when knowledge charged to an employer is predicated on its alleged inadequate safety policy.

### B. Constructive Knowledge Arising From Inadequacy of NYSEG's Safety Program

Assuming, for purposes of its analysis, that Webb was not a supervisor, the Commission concluded that NYSEG had constructive knowledge of Price's conduct because it was not sufficiently diligent in providing supervision. NYSEG challenges this conclusion on two grounds, arguing first that there was no evidence in the Secretary's case-in-chief to show that it did not sufficiently monitor its employees, and second that there was not substantial evidence, taking the record as a whole, to support such a finding.

■ In evaluating the sufficiency of the evidence, our review is not confined to the evidence presented in the Secretary's case. In the case at hand petitioner unsuccessfully moved for dismissal at the close of the Secretary's case and proceeded, following denial of that motion, to present evidence of its own. It therefore waived the right to appeal from the denial of its motion to dismiss, *see Bituminous Constr., Inc. v. Rucker Enters., Inc.*, 816 F.2d 965, 967 (4th Cir. 1987), since "the sufficiency of the evidence is tested on appeal by viewing the entire record." *Duval v. Midwest Auto City, Inc.*, 578 F.2d 721, 724 (8th Cir.1978); *cf.* OSH Act § 11(a), 29 U.S.C. 660(a) (requiring courts to look to record as a whole when reviewing factual findings). Because petitioner chose to present a rebuttal case following the ALJ's denial of its motion to dismiss, it cannot now claim that the evidence in the Secre-

tary's case, viewed by itself and independently from the whole record, was insufficient.

■ Having said that, we must nonetheless point out that in reaching the conclusion that NYSEG's safety program was inadequate if Webb was not a supervisor, the Commission improperly assumed—as explained above—that NYSEG bore the burden of proof with respect to showing employer knowledge. In addition, the Commission's reasoning was at odds with the OSH Act because it effectively subjected NYSEG to absolute liability for Price's conduct. Under the plain terms of the Act, worker safety is to be ensured only "so far as possible." OSH Act § 2(b), 29 U.S.C. § 651(b). The Commission's usual rule that an employer may be held liable if it has knowledge of a safety violation—whether such knowledge is imputed to it from a supervisor, stems from its failure to establish an adequate safety program, or arises from some other grounds—is consistent with the statute because it does not impermissibly insist upon safety measures beyond those that are reasonable. *See* 29 U.S.C. § 666(k) (no serious violation where employer could not have known, with the exercise of reasonable diligence, of the violation); *REA Express*, 495 F.2d at 826. But, as earlier stated, the Commission's opinion reveals it did not apply its usual rule in the present case.

Instead, it impaled NYSEG on the horns of a dilemma. If Webb was a supervisor, then his knowledge must be imputed and NYSEG therefore had knowledge. If, on the other hand, Webb was not a supervisor, then NYSEG's safety policy was inadequate because it conducted insufficient monitoring. In effect, the Commission found a single violation of the standard was enough to show that NYSEG's supervision was insufficient. By ruling that NYSEG's safety policy was inadequate if there was no supervisor constantly present to monitor Price's activities, the Commission imposed an unreasonable obligation on NYSEG. Depending upon the circumstances, close supervision may or may not be reasonably necessary to attain compliance with safety rules. *See Horne Plumbing*, 528 F.2d at 569. Insisting that each employee be under continual supervisor surveillance is a patently unworkable burden on employers. Thus, the Commission relied on a construction of the statute that is impermissible, *see Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781–82, and its order must be set aside as arbitrary and capricious, *Bancker Constr.,* 31 F.3d at 34.

Although petitioner presented voluminous evidence of its safety practices, the Commission did not seriously analyze the reasonableness of this program. Rather, it applied a *per se* rule that a supervisor must be present at all times. Whether, given the evidence adduced at the hearing, the Commission would have been entitled to find that NYSEG's monitoring for purposes of ensuring its workers' safety was insufficient, is a matter we need not decide. On appeal, both parties advanced reasons for reaching opposite conclusions regarding the adequacy of NYSEG's safety program. But to accept the Secretary's position would be to "accept appellate counsel's *post hoc* rationalizations for agency action." *Metropolitan Life,* 380 U.S. at 444, 85 S.Ct. at 1064–65. We therefore must remand this issue to the Commission for its reconsideration.

### C. *Imputation of Webb's Knowledge to His Employer*

■ NYSEG avers it had no knowledge of Price's conduct by imputation from Webb because Webb was not a supervisory employee and, in any event, he had no knowledge or constructive knowledge of Price's conduct. Neither argument is persuasive.

Although the ALJ ruled that Webb's knowledge should be imputed to his employer because of his status as "crew leader," the Commission expressly declined to decide whether Webb was a supervisor for such purposes. Instead, the Commission held that the employer had knowledge of the safety violation regardless of whether Webb held a supervisory position. As already explained, when evaluating NYSEG's knowledge in the event Webb was not a supervisor, the Commission used an arbitrary rule inconsistent with the Act. Because a ruling that Webb was not a supervisor would not necessarily dispose of this case, and because Con-

gress has given the Commission the primary role in making such factual findings, we decline to reach or decide the question. In remanding, we leave the issue of Webb's status for the Commission to decide.

The Commission did, however, determine as a fact that Webb—although he did not actually know of Price's infractions—had constructive knowledge if he was a supervisor because he was working nearby and the violations were easy to see. This finding, although its materiality is contingent upon Webb's supervisory status—a question yet to be resolved—is amply supported by substantial evidence. The testimony indicated that the two men were working at the same intersection on the same gas-line project. Although Webb says he did not actually notice that Price was not wearing the appropriate safety gear, the record strongly suggests that if he had looked at Price he could have known. The sound of a pneumatic jackhammer certainly put Webb on notice that Price was engaging in a potentially dangerous activity requiring the use of safety goggles and toe protectors. On remand NYSEG may not therefore avoid liability on the grounds that Webb, if he is found to be a supervisor, could not reasonably have known of the violation.

### D. *Unforeseeability of Price's Conduct*

■ NYSEG maintains further that it should have prevailed regardless of whether Webb was a supervisor with constructive knowledge, because the evidence shows that its safety policy was adequate and the violation was unforeseeable. As earlier noted, when the Secretary attempts to prove constructive knowledge on the basis of the alleged inadequacy of the employer's safety policy, one element of the employer's "unforeseeable employee misconduct" defense is also necessarily relevant to the Secretary's *prima facie* case.

The Commission improperly analyzed this issue—insofar as it related to the Secretary's case—by departing from its own precedent and placing the burden of proof on the employer and by imposing absolute liability. A

review of the Commission's opinion shows that the same *per se* liability analysis infected its ruling that the employer failed to establish the unforeseeable employee misconduct defense. On remand, if the Commission reaches the question of whether petitioner carried its burden of persuasion with respect to the defense, it must do so without applying a *per se* rule that a safety policy is inadequate unless employees are under constant supervision. Using the usual four-part test for this defense, *see, e.g., Dover,* 1993 O.S.H.D. at 41,480; *Pride,* 15 O.S.H. Cas. at 1816, would of course be permissible under the Act so long as the Commission only requires a reasonable policy and does not impose absolute liability. The Commission may not, however, infer that the employer's safety policy is inadequate simply because an employee worked at a field site where no supervisor was present.

### CONCLUSION

In sum, we hold that the Commission arbitrarily and capriciously concluded that NYSEG's safety policy was inadequate, first, by departing without explanation from its prior decisions placing the burden regarding knowledge on the Secretary and, second, by impermissibly construing the Act and applying a *per se* rule that a safety policy is inadequate if employees are not constantly monitored for safety violations. Accordingly, the Commission's order sustaining the validity of the citation against NYSEG must be set aside.

We decline to decide whether any of the following determinations are supported by substantial evidence: (1) that the employer's safety policy was or was not reasonably adequate, (2) that Webb was or was not a supervisor for purposes of imputing knowledge to his employer, or (3) that Price's misconduct was or was not unpreventable. However, the Commission's finding that Webb had constructive knowledge of Price's conduct, if indeed he was a supervisor, is affirmed.

For the reasons stated, the Commission's order is set aside, in part, affirmed, in part,

and the case is remanded for further proceedings not inconsistent with this opinion.