OPINION OF THE COURT
Alice Schlesinger, J.
Petitioners the City of New York and the Department of Juvenile Justice (DJJ) commenced this proceeding on behalf of three of their juvenile detention centers, Crossroads Juvenile Center, Horizon Juvenile Center and Bridges Juvenile Center (the Centers), to annul the April 21, 2010 decision by the State Industrial Board of Appeals (the Board) which upheld three notices of violations (NOVs) issued against the Centers in 2007. Respondent District Council 37, AFSCME, AFL-CIO (DC 37), the union that represents the workers at the three Centers, has submitted an answer opposing the petition. Respondents the Commissioner of Labor and the Board have moved to dismiss the proceeding.
Background Facts
On or about February 13, 2007, DC 37 filed a complaint with the Public Employee Safety and Health Bureau of the New York State Department of Labor (PESH) against the DJJ, alleging that the DJJ had exposed its employees at the Centers to workplace violence in the nature of physical assaults on the staff by the juveniles residing there. The complaint alleged that the Centers had violated Labor Law § 27-a (3), commonly known as the General Duty Clause. That provision, entitled “Duties,” states that
“a. Every employer shall: (1) furnish to each of its employees, employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to its employees and which will provide reasonable and adequate protection to the lives, safety or health of its employees.” (Labor Law § 27-a [3].)
Following an investigation, PESH issued a notice of violation and order to comply (NOV) to each of the three Centers on October 19, 2007. Each NOV contained two citations, and all *400 were identical (copies are attached to the petition as exhibits 1, 2, 3). Citation 1, denominated as “Serious,” was based on the above-quoted General Duty Clause and stated as follows:
“Section 27-a (3) (a) (1): The employer did not furnish to each of its employees, employment, and a place of employment which is free from recognized hazards that are causing or are likely to cause death or serious physical harm to its employees and which will provide reasonable and adequate protection to the lives, safety, or health of its employees:
“a) Employees at [the named] Juvenile Center were exposed to serious physical injuries while caring for residents], who have been known to be violent. Feasible and reasonable abatement methods for controlling this hazard include, but are not limited to meeting the following requirements of the Workplace Violence [Prevention] Act, New York State Labor Law Article 2, Section 27-b:
“1) 27-b (3): Perform a risk evaluation and determination. Determine the presence of factors or situations that might place employees at risk of occupational assaults and homicides.
“2) 27-b (4): Describe in the program the methods the employer will use to prevent incidents of occupational assaults and homicides.
“3) 27-b (5) (a): Make the workplace violence policy available to employees and their representatives.
“4) 27-b (5) (b): Provide information and training to employees on the risk of occupational assaults and homicides in their workplaces, at the time of their initial assignment and annually thereafter.”
At the end of the citation, a highlighted provision advised the DJJ that it had about 90 days to correct the problem, stating: “Date By Which Violation Must be Abated: 01/16/2008.5,[1]
Soon after receiving the NOVs, the DJJ filed petitions with respondent the State Industrial Board of Appeals. In the petitions, the DJJ contested the validity of the NOVs on the ground that the violations had been improperly issued under the General Duty Clause, Labor Law § 27-a (3), instead of pursuant to the Workplace Violence Prevention Act (WVPA), codified at Labor Law § 27-b. WVPA was the proper citation, the DJJ *401 argued, because it specifically addressed the issue of workplace violence and therefore took precedence over the earlier and more general General Duty Clause found at Labor Law § 27-a.
The Commissioner of Labor opposed the petitions, and DC 37 intervened and opposed as well. Both respondents urged the Board to uphold the NOVs, arguing that, while the reference to the WVPA was appropriate to explain available abatement methods, a citation to that statute as a basis for the violation would not have been proper because implementing regulations had not yet been promulgated as of the date the citations were issued. Therefore, they argued, the WVPA did not at that time constitute a “specific standard” under the federal OSHA laws or the state Public Employee Safety and Health Act (PESHA) statute that could be relied upon as a basis for the citation.
The Board preliminarily rejected the DJJ’s argument and indicated that the Commissioner was free to issue a citation under the General Duty Clause. A hearing was held on or about June 2, 2009. After stipulating to the relevant facts, the parties agreed on a briefing schedule as to the central legal issue, i.e., whether the Commissioner had acted lawfully in citing the DJJ under the General Duty Clause, instead of the WVPA.
After due deliberation, the Board issued a 12-page written decision dated April 21, 2010, denying the petitions and affirming the NOVs. (Exhibit 7.) The Board began with an exhaustive discussion of the federal Occupational Safety and Health Act of 1970 (OSHA) (29 USC § 651 et seq.) enacted to “assure so far as possible eveiy working man and woman in the Nation safe and healthful working conditions.” (29 USC § 651 [b].) The Board further explained in its decision how, pursuant to OSHA, New York State had adopted a “State Plan” for safe and healthful employment, which was enacted as the Public Employee Safety and Health Act (Labor Law § 27-a et seq.) Pursuant to Labor Law § 27-a (4) (b) and OSHA, the Commissioner was required to follow a set procedure, which included notice to the public and an opportunity to comment, in order to promulgate “specific standards” to be enforced to carry out the mandates set forth in PESHA.
Next, the Board discussed at length the Workplace Violence Prevention Act (Labor Law § 27-b), enacted in 2006. Whereas PESHA’s General Duty Clause speaks about workplace safety in broad terms, WVPA targets workplace violence specifically and includes provisions “to ensure that the risk of workplace assaults ... is evaluated . . . and that [public] employers *402 design and implement workplace violence protection programs to prevent and minimize the hazard of workplace violence.” (Labor Law § 27-b [1].) To help effectuate that goal, the WVPA gives examples of factors that an employer might consider in evaluating workplace risks and then offers elements that might be included in a written workplace violence prevention program. The statute then expressly directs the Commissioner of Labor to adopt detailed implementing rules and regulations so as to meet the intent of the WVPA, consistent with the requirement in Labor Law § 27-a (4) (b), discussed above, to develop “specific standards.” Such regulations were adopted effective April 29, 2009, about two years after the NOVs in this case were issued.
The Board then summarized its decision to uphold the citation in the NOVs to the General Duty Clause, rather than the WVPA, stating that
“[a]lthough the WVPA became effective in 2007 and was in place when the [DJJ] was cited on October 19, 2007, it was not promulgated according to the specifications required under OSHA and PESHA. Absent promulgation as a ‘specific standard’ as defined by Labor Law § 27-a (4) (b), WVPA could not be cited as such under PESHA. DOL correctly cited DJJ for violating the General Duty Clause. There were no specific standards in place at the time of this citation. It is not until the implementing regulations are promulgated and filed with the Department of State that an employer may be cited under them. See NYS Coalition of Pub. Empls. v Dept of Labor, 89 AD2d 283 (1982), affd 60 NY2d 789 (1983) (OSHA standards adopted pursuant to Labor Law § 27-a[4][a] not effective until filed with the Department of State).”
In reaching that conclusion, the Board expressly rejected the DJJ’s contention that the WVPA took precedence over the General Duty Clause under the principle of statutory construction as a later, more specific statute. The Board found that the cited principle did not apply, as the two statutes were “not inconsistent”:
“The General Duty Clause is a broad safety and health standard that applies to all recognized hazards in public employment and is used, for the most part, when there is not a specific standard, which has been promulgated under the procedures of § 27-a. Section 27-b [the WVPA] is a general *403 requirement for all public employers, with a few exceptions, to conduct activities to prevent workplace violence, recognizes that workplace violence is a hazard and provides methods to reduce and/or prevent it. The statutes are not in conflict. In fact, PESH cites to WVPA sections [in the NOVs] in suggesting reasonable abatement of the general duty violation.”
This CPLR article 78 proceeding ensued.
Discussion
The DJJ argues in its petition (1i 52) that the Board’s decision is
“entirely without legal or logical foundation and arbitrary and capricious because (a) it is based on the erroneous assumption that the legislature cannot create a specific standard by statute, (b) [it] is based on the erroneous belief that WVPA does not meet the requirement of federal State Plan regulations, (c) it fails to accept the well established principle of statutory interpretation that a specific law takes precedence over an older and general law, and (d) [it] essentially reads the WVPA out of existence by rendering it a redundancy of the General Duty Clause.”
As noted above, DC 37 has opposed the petition, and the Commissioner of Labor and the Board have moved to dismiss. For the reasons stated below, the petition is denied, the motion is granted, and the proceeding is dismissed.
First and foremost, it cannot be overemphasized that judicial review of administrative decisions such as the one issued here by the Board is extremely limited. Unless the decision is arbitrary and capricious or affected by an error of law, it must be upheld; the test is essentially one of rationality. (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974].) The Board’s decision here includes a thorough, reasoned analysis of the law and a conclusion that has a rational basis. As demonstrated in the above discussion, the Board carefully addressed and directly rejected the DJJ’s arguments, which are essentially the same as those presented here.
In support of their request to dismiss this proceeding, respondents assert that the Commissioner may cite the General Duty Clause in an NOV where there is no PESHA standard that dictates the specific steps that an employer must take to *404 protect employees from a particular hazard. Only when a specific PESHA standard exists must the Commissioner cite that standard instead of the General Duty Clause. (See e.g. New York State Elec. & Gas Corp. v Secretary of Labor, 88 F3d 98, 102 [2d Cir 1996].)
The phrase “specific standard” is a term of art. An understanding of the term necessarily defeats petitioners’ first two arguments, that the legislature can create a “specific standard” by statute and that the WVPA qualifies as such a “specific standard” under the state plan adopted pursuant to federal law.
To create a “specific standard,” which is formally known as a PESHA standard, the Commissioner must take certain steps in accordance with statutory requirements, including collaborating with the Hazard Abatement Board to determine whether alternate specific standards should be promulgated, publication of the proposed regulation in the State Register, publication of a regulatory impact statement, providing for a notice and comment period, and filing with the Department of State. (See Labor Law § 27-a [4] [b]; State Administrative Procedure Act §§ 202, 203.) A PESHA standard is not valid unless it is promulgated pursuant to these procedures. (See Matter of New York State Coalition of Pub. Empls. v New York State Dept. of Labor, 60 NY2d 789, 791 [1983].)
The WVPA is a statute enacted by the legislature. Thus, while it may contain some standards that a layperson may consider “specific” in the ordinary sense of the word, it is not a specific PESHA standard as that term is defined in the law because it was not promulgated pursuant to the Labor Law and State Administrative Procedure Act. Until the Commissioner promulgated the WVPA regulations nearly two years after the NOVs were issued in this case, no specific standards existed that could serve as the basis for a citation.[2] In the absence of specific standards, the citation to the General Duty Clause was proper. And rather than nullifying the WVPA, the citation expressly referenced the WVPA to give the employer some guidance as to how the violation could be corrected. However, the WVPA could not be the basis for the citation itself. The DJJ’s claims to the contrary lack merit as they ignore the basic framework of the statutory and regulatory schemes. Respondents have also persuasively distinguished the various cases cited by the DJJ in *405 its petition, noting, for example, that none of them deals with PESHA.
Similarly misguided is the DJJ’s claim that the Board erred in failing to accept its statutory construction argument that the WVPA is a later, more specific statute that takes precedence over the General Duty Clause. As the Board correctly noted in its decision, citing McKinney’s Cons Laws of NY, Book 1, Statutes § 397, the principle of statutory construction does not apply where the two statutes are not inconsistent and both can be given effect when they stand together. Here, there is no conflict. As discussed above, the General Duty Clause includes provisions regarding workplace safety in general, whereas the WVPA addresses the specific issue of workplace violence. Nothing prevents an employer from complying with both the General Duty Clause and the WVPA. Now that implementing regulations have been promulgated, the Commissioner has acknowledged that the WVPA should be cited when the violation is based on workplace violence, but for the reasons discussed above, such a citation was not proper at the time the subject NOVs were issued.
Wholly without merit is the petitioner’s claim that the Board’s decision “reads the WVPA out of existence by rendering it a redundancy of the General Duty Clause.” Rather than nullifying it, the NOVs specifically referenced the WVPA and offered its provisions as examples of corrective measures that the employer could take to correct the violation. The Board in its decision similarly recognized that the two statutes could work together to insure workplace safety. Its analysis was rationally based on the underlying federal and state statutory schemes and the language of the two statutes involved.
In sum, the DJJ has failed in this proceeding to demonstrate that the Board’s decision was arbitrary and capricious or in violation of the law. Therefore, its request to annul the NOVs is denied in its entirety.
Accordingly, it is hereby ordered that the motion to dismiss by the Commissioner of Labor and the New York State Industrial Board of Appeals, is granted; and it is further adjudged that the petition is denied and this CPLR article 78 proceeding is dismissed.

. Citation 2 related to the provision of records for inspection and copying, was remedied promptly and is not at issue here.

. The regulations, ultimately promulgated and included in 12 NYCRR 800.6, became effective on April 29, 2009, nearly two years after the NOVs were issued in October 2007, following publication in the State Register.