CAPITAL ELECTRIC LINE BUILDERS
OF KANSAS, INC., Petitioner,

v.

Ray MARSHALL, Secretary of
Labor, Respondent.

No. 80–1711.

United States Court of Appeals,
Tenth Circuit.

May 12, 1982.

Ronald C. Spradley, Spradley & Wirken, Kansas City, Mo. (with Frederick H. Riesmeyer, II, Kansas City, Mo., and with H. C. Cleveland, III of Saunders, Snyder, Ross & Dickson, P. C., Denver, Colo., on the brief), for petitioner.

Ann Nachbar, Dept. of Labor, Washington, D. C. (with Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol.

for Occupational Safety and Health, Dennis K. Kade, Associate Counsel for Appellate Litigation, and Tedrick A. Housh, Jr., Regional Sol., Washington, D. C., on the brief), for respondent.

Before McWILLIAMS and McKAY, Circuit Judges, and ANDERSON, District Judge.*

McKAY, Circuit Judge.

This petition for review filed by Capital Electric Line Builders of Kansas, Inc. challenges the determination of an Occupational Safety and Health Review Commission (OSHRC) administrative law judge (ALJ) that Capital Electric willfully violated three safety standards under the Occupational Safety and Health Act (OSHA), 29 U.S.C. §§ 651–678. During an investigation of a fatality at a site where Capital Electric employees were working on electrical transmission lines, an OSHA compliance officer determined that Jesse Payne was electrocuted while removing a ground clamp on a utility line when one hand apparently came into contact with an energized switch. No one actually saw the accident occur, but it is undisputed that Mr. Payne was not wearing rubber insulated gloves at the time, although he and his co-worker had taken gloves up with them in the aerial bucket. Consequently, Capital Electric was cited for serious violations of: (1) 29 C.F.R. § 1926.-950(c)(1) for allowing an employee to work too closely to energized parts without insulating equipment; (2) 29 C.F.R. § 1926.-954(e)(2) for allowing an employee to remove grounds without using insulating tools; and (3) 29 C.F.R. § 1926.556(b)(2)(v) for allowing an employee to work in an aerial bucket without a restraining belt. Capital Electric contested the citations. Although the original complaint alleged serious violations of the standards, the Secretary later amended the complaint to allege willful violations as a result of its discovery that one year earlier a Capital Electric employee had died in an electrocution accident.

After a hearing, the ALJ found that Capital Electric had indeed willfully violated the three standards, and imposed a penalty of $10,000. The ALJ's decision became a final order of the Commission after the Commission denied discretionary review. 29 U.S.C. § 661(i).

The ALJ, in essence, reasoned that the Secretary "clearly met and carried his burden of proof as to ... the violations" by showing the fact of the electrocution, coupled with the fact that the employee was not using or wearing proper insulating equipment or body belts. Record, vol. 3, at 182. Capital Electric contended in its answer to the complaint, however, that Mr. Payne's death was the result of his "unforeseeable, unanticipated" failure to properly observe company safety standards. *Id.* at 38–39. The ALJ placed the burden of establishing unpreventable employee misconduct on Capital Electric, and determined that it failed to meet this burden because the foreman had not adequately warned the employees to "cover-up," i.e., to use insulating equipment, immediately prior to their ascent in the aerial bucket.

We believe that the ALJ improperly allocated the burden of proof in this case. In *Mountain States Telephone & Telegraph Co. v. OSHRC*, 623 F.2d 155 (10th Cir. 1980), we stated that in a case where the presence or absence of a violation essentially turns on alleged omissions by a supervisor, the burden of disproving unpreventable employee misconduct rests with the Secretary of Labor. *Id.* at 158. The basis of this decision was Commission Rule 73(a), which places the burden of establishing an alleged violation on the Secretary in all cases. 29 C.F.R. § 2200.73(a); *Mountain States Telephone & Telegraph Co. v. OSHRC*, 623 F.2d at 157–58; *Brennan v. OSHRC*, 511 F.2d 1139, 1143 (9th Cir. 1975). It is not sufficient that the Secretary merely show the existence of the violation; he must also prove that the employer had knowledge of the violation before any liability can be

---

* Honorable Aldon J. Anderson, Chief Judge, United States District Court for the District of Utah, sitting by designation.

imposed. 29 U.S.C. § 666(j); *Mountain States Telephone & Telegraph Co. v. OSHRC*, 623 F.2d at 158; *Horne Plumbing & Heating Co. v. OSHRC*, 528 F.2d 564, 570 (5th Cir. 1976); *Brennan v. OSHRC*, 511 F.2d at 1143–44.

■ No evidence was produced at trial that directly supports a conclusion that the employer knew or should have known that Mr. Payne would be working without the necessary equipment. The ALJ determined, however, that the employer had "constructive knowledge" that its foreman did not instruct and supervise "the utilization of appropriate cover up devices in the performance of the work by the [journeyman] linemen." Record, vol. 3, at 185. Although the actual act constituting the alleged violation occurred when the employee worked without the proper equipment, the thrust of the ALJ's finding is that the violation occurred because of the supervisor's alleged failure to provide adequate supervision and warnings to his employees. Therefore, as in *Mountain States Telephone & Telegraph*, the alleged "noncomplying behavior is the supervisor's own," so the burden to show preventability of employee misconduct properly rested with the Secretary. 623 F.2d at 158. The Secretary can meet this burden by showing that the violation was foreseeable because of inadequacies in safety precautions, training of employees, or supervision. *See, e.g., Ocean Electric Corp. v. Secretary of Labor*, 594 F.2d 396, 403 (4th Cir. 1979); *Danco Construction Co. v. OSHRC*, 586 F.2d 1243, 1247 n.6 (8th Cir. 1978); *National Realty & Construction Co. v. OSHRC*, 489 F.2d 1257, 1267 (D.C.Cir. 1973). *But see H. B. Zachry Co. v. OSHRC*, 638 F.2d 812, 818 (5th Cir. 1981) (burden of proof placed on employer).

Although the ALJ erred in placing the burden of proving unpreventable employee misconduct on the employer, we find it unnecessary to remand this case for further consideration. After reviewing the record, we find no evidence to support a finding that Capital Electric breached its duties to provide adequate safety precautions, training and supervision.

■ It is undisputed that Capital Electric provided its employees with all the safety equipment required by the standard. The company regularly disseminated safety information to its employees, conducted weekly tailgate safety meetings at which the subject of "covering up" was discussed, and held a tailgate meeting immediately preceding every job. Capital Electric enforces its safety program by reprimands, suspensions, and, if necessary, firings. There was expert testimony, uncontradicted by the Secretary, that Capital Electric's safety program was entirely adequate. Thus, this is not a case in which the employer took inadequate safety precautions by not supplying the required equipment or by not strictly requiring its use. *Cf. Mineral Industries & Heavy Construction Group v. OSHRC*, 639 F.2d 1289 (5th Cir. 1981) (company chose not to use reverse alarms or signalmen for equipment); *Martin Painting & Coating Co. v. Marshall*, 629 F.2d 437 (6th Cir.), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980) (inadequate safety precautions taken to prevent electrocution); *Getty Oil Co. v. OSHRC*, 530 F.2d 1143 (5th Cir. 1976) (employer did not exercise reasonable diligence to determine whether necessary safety testing had been carried out).

It is also undisputed that Jesse Payne was a highly trained, experienced employee. He was a journeyman lineman with at least ten years of experience in electrical line construction. To become a journeyman lineman requires at least four years of periodic classroom work and 7,000 hours of on-the-job training, which includes work on energized lines. At the culmination of the apprenticeship program, a candidate takes a journeyman lineman examination, which contains numerous questions involving safety, the use of insulating materials, and the circumstances in which an energized circuit must be covered up. Mr. Payne passed such an examination slightly more than one month prior to the accident. In addition, Mr. Payne's co-worker, who was in the aerial bucket at the time of the accident, characterized him as a deliberate, safe worker,

and stated that he had never seen Mr. Payne do anything unsafe while at work. Record, vol. 3, at 174. Nothing contained in the record would put the supervisor or employer on notice that Mr. Payne was likely to work in violation of the standard. *Cf. Floyd S. Pike Electrical Contractor, Inc. v. OSHRC*, 576 F.2d 72 (5th Cir. 1978) (inexperienced foreman placed in charge of inexperienced crew); *REA Express, Inc. v. Brennan*, 495 F.2d 822 (2d Cir. 1974) (supervisory personnel permitted untrained employees to attempt repairs on high voltage equipment on wet concrete floor without protective equipment).

The only conceivable shortcoming suggested by the record is an alleged lapse in supervision by the foreman at the job site. *See H. B. Zachry Co. v. OSHRC*, 638 F.2d 812, 819 (5th Cir. 1981). The facts show that before going up in the aerial bucket the foreman explained the job to be done and warned the employees of the energized areas to be avoided. He did not, however, specifically admonish them to "cover-up" or to wear a body belt. From these omissions, the ALJ concluded that the employer left the use of protective gear to the discretion of its linemen, and thus "fell woefully short in the enforcement of the standards, in that in the area of supervision, observation of proper observance of the standards, and enforcement of the protective provisions of the standards, respondent was lax." Record, vol. 3, at 184. The Secretary's entire case, then, hinges on whether the foreman's failure to advise the employees to use protective gear immediately prior to commencing a task is sufficient to support a violation. *See Brennan v. Butler Lime & Cement Co.*, 520 F.2d 1011, 1018 (7th Cir. 1975).

■ The standards governing work in energized areas inherently require a judgment call by the employee as to when "cover-up" protection is necessary. The standards incorporate a table that establishes the distances an employee must maintain from an energized circuit or line unless protected by some insulating device. The Secretary concedes that the supervisor is not required to actually accompany the employees in the aerial bucket or to oversee their work from below, and indeed such a requirement would be unreasonable. *See Horne Plumbing & Heating Co. v. OSHRC*, 528 F.2d 564, 569 (5th Cir. 1976); *Cape & Vineyard Division of New Bedford Gas v. OSHRC*, 512 F.2d 1148, 1155 (1st Cir. 1975); *Brennan v. OSHRC*, 502 F.2d 946, 949 (3d Cir. 1974). Therefore, the lineman must determine from his vantage point 50–60 feet in the air when to use certain equipment, a decision that necessarily changes as working conditions change. In this case, even if the supervisor had warned the two employees to cover up, they would still have been required to use their judgment, based on their experience and extensive training, as to when the situation calls for specific equipment. Contrary to the reasoning of the ALJ, we believe that when a standard requires an experienced, highly trained employee to make a judgment as to what equipment is necessary, the fact that the employer relies on the employee's judgment does not amount to the forbidden practice of shifting responsibility for compliance from the employer to the employee. *See* Record, vol. 3, at 184. When an employee is working 50–60 feet in the air, there is little an employer can do to insure that the employee makes the proper judgment beyond providing adequate training and equipment, and explaining how to perform the job and what general hazards to avoid. *See Horne Plumbing & Heating Co. v. OSHRC*, 528 F.2d at 569–70. From the record it is clear that Capital Electric carried out these duties with respect to the violations charged. *Cf. Danco Construction Co. v. OSHRC*, 586 F.2d 1243 (8th Cir. 1978).

Under the circumstances of this case, we conclude that the record does not support a finding of any violation, much less a willful one. The ALJ, in effect, inferred willfulness from the fact of the previous employee death. The mere fact of a previous violation of a standard may support a finding of a "repeated" violation under the Act, *see Dun-Par Engineered Form Co. v. OSHRC*, 676 F.2d 1333 (10th Cir. 1982)—a type of violation not alleged in this case—but does

not, without more, show that an employer "intentionally disregard[ed] the standard or [was] plainly indifferent to its requirement." *Kent Nowlin Construction Co. v. OSHRC*, 593 F.2d 368, 372 (10th Cir. 1979).

The decision of the Commission enforcing the citation is vacated in all respects and set aside.

REVERSED.