2007 WY 93

**THREE SONS, LLC, Appellant (Petitioner),**

v.

**WYOMING OCCUPATIONAL HEALTH AND SAFETY COMMISSION (OSHA), Appellee (Respondent).**

No. 06–228.

Supreme Court of Wyoming.

June 7, 2007.

Representing Appellant:  John R. Hursh of Central Wyoming Law Associates, Riverton, Wyoming.

Representing Appellee:  Patrick J. Crank, Attorney General;  John W. Renneisen, Deputy Attorney General;  Steven R. Czoschke, Senior Assistant Attorney General;  Kristi M. Radosevich, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]  The Wyoming Occupational Health and Safety Commission (the Commission) issued a citation to, and assessed penalties against, Three Sons, LLC (Three Sons) for job site safety violations. Three Sons contested the citation. After a hearing, the hearing examiner recommended that the Commission uphold the citation. The Commission accepted the recommendation and issued an order upholding the citation. Three Sons filed a petition for review of the order in district court, which also upheld the citation. On appeal, Three Sons contends reversal is required because the hearing examiner improperly allocated the burden of proof. Alternatively, Three Sons claims the evidence presented was insufficient to support the citation. We affirm.

## ISSUES

[¶ 2]  Three Sons states the issues as follows:

A.  The District Court erred in finding that the misallocation of the burden of proof by the agency and the Hearing Officer was harmless error.

B.  The District Court erred in finding that the agency, even under an improper allocation of the burden of proof, [met] it[ ]s burden without any evidence of foreseeability or preventability of the misconduct in question being offered.

C.  The District Court erred in upholding the rejection of the employee misconduct defense and holding the employer to a strict liability standard.

The Commission re-states the issues as follows:

I.  Whether the Order Upholding Citation, which upheld the determination that Three Sons, LLC committed a willful violation of OSHA regulation 1926.652(a)(1) requiring excavation cave-in protection, is supported by substantial evidence, is not arbitrary or capricious, and is in accordance with law?

II.  Whether substantial evidence supports the Order Upholding Citation, which upheld the determination that Three Sons, LLC failed to carry its burden of proof with regard to its attempted defense of "employee misconduct?"

## FACTS

[¶ 3]  On May 20, 2004, Wyoming Occupational Health and Safety (WOSHA) compliance officer, Dan Bulkley, conducted an inspection of Three Sons' work on a water main excavation in Riverton, Wyoming. Mr. Bulkley observed three employees in a seven to eight feet deep trench without cave-in protection in violation of the WOSHA regulations governing excavation safety. Mr. Bulkley interviewed the employees who initially told him that another employee, later identified as Calvin English, instructed them to enter the trench. Mr. Bulkley spoke with Mr. English who denied telling the employees to enter the trench. The employees then changed their story, stating that they entered the trench on their own volition because they wanted to look busy.

[¶ 4]  On June 14, 2004, after completing its investigation, WOSHA issued citations and a notification of penalties to Three Sons, describing the violations and proposed penalties as follows:

*Citation 1 Item 1* Type of Violation: Willful

1926.652(a)(1)* Each employee in an excavation shall be protected from cave-ins by an adequate protective system:

Three employees were in an excavation (7' to 8'7" in depth) without any means of cave-in protection.

* * *

Proposed Penalty: $ 49500.00

*Citation 2 Item 1* Type of Violation: Repeat

1926.651(c)(2)* Means of egress from trench excavations. A stairway, ladder, ramp or other safe means of egress shall be located in trench excavations that are 4 feet (1.22 m) or more in depth so as to require no more than 25 feet (7.62 m) of lateral travel for employees.

One employee had to travel over 115 feet of lateral travel to get to ladder for means of egress in trench.

* * *

Proposed Penalty: $ 3000.00

*Citation 3 Item 1* Type of Violation: Serious

1926.652(g)(1)(ii)* Shields shall be installed in a manner to restrict lateral or other hazardous movement of the shield in the event of the application of sudden lateral loads:

Shield was installed in trench in a manner that could allow potential lateral or other hazardous movement of the shield in the event of sudden lateral loads. The trench box was 3 feet 8 inches from the excavation wall on one side and 3 feet from the wall on the other side.

* * *

Proposed Penalty: $ 1500.00

*Citation 3 Item 2* Type of Violation: Serious

1926.652(g)(1)(iii)* Employees shall be protected from the hazard of cave-ins when entering or exiting the areas protected by shields:

Two employees not protected from the hazard of cave-ins while entering or exiting the areas protected by shield (ladder not setup properly to gain access from trench box to bank of trench or had to jump across top of trench box to bank of trench). Employees could fall down between the wall of the excavation and the trench box which would expose them to the hazard of cave-in.

* * *

Proposed Penalty $ 1500.00

*Citation 4 Item 1* Type of Violation: Non-serious

1926.651(j)(2)* Employees shall be protected from excavated or other material or equipment that could pose a hazard by falling or rolling into excavations. Protection shall be provided by placing and keeping such materials or equipment at least 2 feet (.61 m) from the edge of the excavations, or by the use of retaining devices that are sufficient to prevent materials or equipment from falling or rolling into excavations, or by a combination of both if necessary:

Spill pile was located at the edge of excavation on one side.

* * *

Proposed Penalty $ 0.00

[¶ 5] Three Sons protested the citations and penalties and requested an informal conference to attempt to settle the case without a contested hearing. A conference was held on June 28, 2004. During the conference, Three Sons claimed the violations were a result of employee misconduct. Specifically, it claimed the employees had entered the trench in violation of their supervisor Cody Austin's express instructions not to enter the trench until protective equipment was in place. WOSHA issued a letter on October 18, 2004, rejecting the claim on the ground that Three Sons had not shown that it had advised two of the three employees involved of the excavation safety rules prior to moving them from the concrete work they had been doing to work in the trench.

[¶ 6] After receiving the letter, Three Sons submitted new documentation to WOSHA claiming the violation was the result of employee misconduct on the part of Mr. English rather than the three employees previously accused of misconduct. Included in the documentation was a form indicating that Three Sons issued Mr. English a written warning after the WOSHA inspection for not knowing the trench safety rules and for allowing the three employees from his crew to enter an unprotected trench. After reviewing the new documentation, WOSHA issued another letter rejecting Three Sons' claim of employee misconduct.

[¶ 7] Three Sons requested a contested case hearing, which was held April 21 and 22, 2005. At the start of the hearing, Three Sons agreed not to contest Citations 2 and 4 and the parties reached an agreement as to the penalty amounts for those violations, leaving Citations 1 and 3 for hearing. Both parties presented evidence. On May 18, 2005, the hearing examiner issued a decision recommending that the Commission uphold the citations.

[¶ 8] The Commission held a special meeting on September 14, 2005, to consider the recommendation. The next day, the Commission issued an order upholding the citations and imposing the following penalties:

Citation 1 Item 1 $49,500.00
Citation 2 Item 1 $ 2,250.00
Citation 3 Item 1 $ 1,500.00
Citation 3 Item 2 $1,125.00 [1]

[¶ 9] Three Sons filed a petition for review of administrative action in the Carbon County district court asserting two claims. First, it claimed the hearing examiner had disregarded Mr. Austin's testimony that the employees involved in the incident were ordered not to enter the trench until they were properly trained and a trench box was in place. Second, it claimed the finding of a willful violation and the imposition of a $49,500 penalty for citation 1 were not supported by sufficient evidence, were arbitrary and were contrary to the evidence.

[¶ 10] Upon considering the record and the parties' briefs, the district court issued a decision letter in which it concluded: 1) the hearing examiner was justified in finding that Three Sons failed to communicate its rules to the three employees given the conflicting and inconsistent claims Three Sons presented; 2) the hearing examiner did not err in concluding that the violation was willful given the seriousness of the violation, Three Sons' prior violations of the same provision and WOSHA's desire to deter future violations; and 3) no evidence suggested the Commission exceeded its discretion in imposing the penalties it imposed. The district court entered an order affirming the Commission's order upholding the citation. Three Sons appealed from that order.

## STANDARD OF REVIEW

[¶ 11] In reviewing an appeal from a district court's decision on a petition for review of administrative action, we afford no deference to the district court's decision and, instead, review the case as if it came directly from the agency. *Bonsell v. State ex rel. Wyo. Workers' Safety and Comp. Div.,* 2006 WY 114, ¶ 7, 142 P.3d 686, 688 (Wyo. 2006). Judicial review of agency decisions is limited to those considerations specified in Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2005), which provides in pertinent part:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> . . .
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Additionally, we have said:

> The substantial evidence test is the appropriate standard of review in appeals from contested case proceedings when factual findings are involved and both parties submit evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence. Even if the factual findings are found to be supported by substantial evidence, the ultimate agency decision may still be found to be arbitrary or capricious for other reasons. An appellate court does not examine the record only to determine if there is substantial evidence to support the agency's decision, but it also must examine the conflicting evidence to determine if the hearing examiner could have reasonably made its finding and order upon all of the evidence before it.

---

1. The order did not mention Citation 4 because the parties agreed no penalty would be imposed.

We do not defer to the agency's determination on issues of law; instead, we will correct any error made by the agency in either interpreting or applying the law. *Bonsell*, ¶ 8, 142 P.3d at 688–89 (citations omitted).

## DISCUSSION

### *1. Allocation of t he Burden of Proof*

[¶ 12] In its first issue, Three Sons contends that the hearing examiner improperly placed the burden of proving employee misconduct on it, the employer, rather than on WOSHA. Three Sons cites *Mountain States Telephone and Telegraph Co. v. OSHRC*, 623 F.2d 155 (10th Cir.1980) and *Capital Electric Line Builders of Kansas, Inc. v. Marshall*, 678 F.2d 128 (10th Cir.1982) as support for its assertion.

[¶ 13] Initially in these proceedings, Three Sons took the position that employee misconduct was an affirmative defense that it had the burden of proving once WOSHA established a *prima facie* case. In his opening comments at the administrative hearing, Bill Langston, Three Sons' safety manager, said,

> I understand [employee misconduct] is an affirmative defense, but the paragraph in the regulations that govern affirmative defenses says an affirmative defense is a matter which, if established by the employer, will excuse the employer from a violation which has otherwise been proven by [OSHA]. They still must prove their case first.

The "regulation" to which Mr. Langston referred is found in the U.S. Department of Labor OSHA Field Inspection Reference Manual, CPL 2.103, Section 7, Chapter III C. 8 a. In addition to the portion quoted by Mr. Langston, the section provides:

> b. **Burden of Proof.** Although affirmative defenses must be proved by the employer at the time of the hearing, OSHA must be prepared to respond whenever the employer is likely to raise or actually does raise an argument supporting such a defense. [OSHA], therefore, shall keep in mind the potential affirmative defenses that the employer may make and attempt to gather contrary evidence when a statement made during the inspection fairly raises a defense. * * *

"Unpreventable employee misconduct" is specifically mentioned in the manual as one of the more common affirmative defenses and is described as follows:

> (1) **Unpreventable Employee Misconduct or "Isolated Event".** The violative condition was:
>
> (a) Unknown to the employer; and
>
> (b) In violation of an adequate work rule which was effectively communicated and uniformly enforced.

[¶ 14] Thus, initially in these proceedings both parties approached the employee misconduct claim as an affirmative defense that Three Sons had the burden of alleging and proving. In her recommended decision, the hearing examiner agreed, reaching the following conclusions of law concerning the burden of proof:

> 1. OSHA bears the burden of proof in the proceedings herein. "The general rule in administrative law is that, unless a statute otherwise assigns the burden of proof, the proponent of an order has the burden of proof." *JM v. Department of Family Services*, 922 P.2d 219, 221(Wyo.1996).
>
> * * *
>
> 14. In this case, Three Sons asserted the affirmative defense of employee misconduct. In doing so, the burden of proof shifted to Three Sons to prove the following four elements:
>
> 1) The employee misconduct is unknown to the employer;
>
> 2) There is a rule or regulation that covers the particular type of behavior or action of the employee;
>
> 3) The rule is effectively communicated to the employee;
>
> 4) The rule was enforced.

Based upon the evidence presented, the hearing examiner concluded OSHA had met its burden of proving that Three Sons violated the excavation safety regulation and that Three Sons failed to meet its burden of proving employee misconduct.

**64**

[¶ 15] In its petition for review of the Commission's order upholding the citation, Three Sons did not raise the issue of the burden of proof. Later, in its district court brief, however, Three Sons argued for the first time that the hearing examiner misallocated the burden of proof by requiring the employer to prove unpreventable employee misconduct. Citing *Mountain States*, 623 F.2d at 158, Three Sons asserted that OSHA had the burden of disproving unpreventable employee misconduct. It argued, "it is not sufficient that [OSHA] merely show the existence of the violation, [it] must also prove that the employer had knowledge of the violation." *Capital Electric*, 678 F.2d at 129–30.

[¶ 16] Responding to this argument in its decision letter, the district court noted that a majority of courts have held that the employer has the burden of proving the affirmative defense of employee misconduct. However, the district court said, a minority of courts, including the Tenth Circuit Court of Appeals, have held that when an employer invokes the defense, OSHA bears the burden of proving that a particular cited safety violation was foreseeable or preventable. Under either allocation of the burden of proof, the district court concluded, the evidence was sufficient to support the hearing examiner's order.

[¶ 17] Addressing the burden of proof in administrative actions, we have said:

> [The] allocation of the burden of proof is a matter of law. The general rule in administrative law is that, unless a statute otherwise assigns the burden of proof, the proponent of an order has the burden of proof. In general, an agency is the proponent of its orders, while an applicant for benefits or for a license is the proponent in eligibility determinations.

*JM v. Dep't of Family Servs.*, 922 P.2d 219, 221(Wyo.1996) (citations omitted). In determining which party bears the burden of proof, we consider the applicable substantive statutes. *Id.* at 222. When the statutes do not assign the burden of proof, the proponent of the order has both the initial burden of production and the ultimate burden of persuasion in a contested case hearing. *Id.*

[¶ 18] The purpose of Wyoming's OSHA statutes is to prevent accidents and promote safety in the workplace. Wyo. Stat. Ann. § 27–11–102 (LexisNexis 2005). The statutes do not assign the burden of proof. Therefore, WOSHA, as the proponent of orders upholding citations and penalties, has both the initial burden of production and the ultimate burden of persuasion in a contested case hearing to prove an employer committed the violations. Precisely what WOSHA must prove in order to satisfy its burden has not been addressed by this Court. However, the question has been addressed by federal courts in the context of the federal OSHA regulations which were adopted verbatim by WOSHA.

[¶ 19] The majority of federal courts hold that unpreventable employee misconduct is an affirmative defense which the employer bears the burden of pleading and proving. *See P. Gioioso & Sons, Inc. v. O.S.H.R.C.*, 115 F.3d 100 (1st Cir.1997); *New York State Elec. & Gas Corp. v. Secretary of Labor*, 88 F.3d 98 (2d Cir.1996); *Brock v. L.E. Myers Co., High Voltage Div.*, 818 F.2d 1270 (6th Cir.1987); *DCS Sanitation Mgmt., Inc. v. OSHRC*, 82 F.3d 812 (8th Cir.1996); *Daniel Int'l Corp. v. OSH*, 683 F.2d 361 (11th Cir. 1982). The rationale for the majority view was stated in *Brock*, 818 F.2d at 1277 (citations omitted):

> Congress has specifically imposed on the employer the "responsibility to assure compliance by his own employees. Final responsibility for compliance with the requirements of this Act remains with the employers." S. Rep 1282, 91st Cong.2d Sess. 10–11 (1970). The statutory duty to assure compliance with standards issued under the Act includes the obligation to prevent hazardous non[-]complying conduct by employees. * * * Since the Act itself places upon the employer the responsibility of taking all reasonable steps to eradicate preventable hazards, "including imposing work rules, communicating the rules to employees, and providing training, supervision and disciplinary action designated to enforce the rules," the Secretary makes out a *prima facie* case of the employer's awareness of a potentially preventable hazard upon the introduction of

proof of the employer's failure to provided adequate safety equipment or to properly instruct its employees on necessary safety precautions.

Thereafter, an employer may defend the citation on the ground that, due to the existence of a thorough and adequate safety program which is communicated and enforced as written, the conduct of its employee(s) in violating that policy was idiosyncratic and unforeseeable. By its nature, information with respect to the implementation of its written safety program will be in the hands of the employer, and it is not unduly burdensome to require it to come forward with such evidence. If the employer's evidence preponderates, it has successfully established the defense of unforeseeable employee misconduct.

[¶ 20] In contrast to the majority of courts, the Tenth Circuit has held in two cases that error occurred when an administrative law judge (ALJ) placed the burden of proving employee misconduct on the employer.[2] In *Mountain States,* 623 F.2d at 158 (citations omitted), the Tenth Circuit stated:

> The question we decide here is whether the Commission erred when it placed upon Mountain States the burden of proving the violation was unpreventable. The Fourth Circuit, in reviewing a Commission decision involving circumstances similar to those here, held the Commission may not place the burden on the employer. We agree with the result reached by the Fourth Circuit.

Factually, *Mountain States* involved a violation committed by a supervisor to whom the employer had entrusted its duty to assure employee compliance with safety standards. Under those facts, the Tenth Circuit held the government had the burden of proving the preventability of employee misconduct.

[¶ 21] Two years later, in *Capital Electric,* 678 F.2d at 130, and a case involving a violation by a non-supervisory employee, the Tenth Circuit again held an ALJ erred in placing the burden of proving employee misconduct on the employer. Citing *Mountain States,* the Court held that the burden to show preventability of employee misconduct rested with the Labor Secretary. The Court stated: "The Secretary can meet this burden by showing that the violation was foreseeable because of inadequacies in safety precautions, training of employees, or supervision." *Id.*

■ [¶ 22] For the reasons stated in *Brock,* we find the majority rule to be the better rule. The employer is ultimately responsible for ensuring compliance with OSHA regulations. Although the agency has the initial burden of production and the ultimate burden of persuasion to prove that a violation occurred, it is reasonable and in accord with our usual evidentiary rules for the burden to shift upon presentation by WOSHA of a *prima facie* case to the employer to prove the affirmative defense of employee misconduct. Therefore, we hold that the hearing examiner properly placed upon Three Sons the burden of proving the affirmative defense of unpreventable employee misconduct.

### 2. Sufficiency of the Commission's Prima Facie Case

[¶ 23] In her order, the hearing examiner concluded that WOSHA met its burden of proving the violation. Three Sons contends that proof of the violation was not sufficient to establish the Commission's *prima facie* case; the Commission was also required to show it was foreseeable that the employees would violate the safety rules by entering the

---

**2.** In *Austin Bldg. Co. v. OSHRC,* 647 F.2d 1063, 1067–68 (10th Cir.1981) (citations omitted), the Court held:

> The Secretary has the burden of showing that the employer knew or, with the exercise of reasonable diligence, could have known of the likelihood of the noncomplying condition or practice. The employer may defend by showing that the violation was an unforeseeable occurrence. Evidence that the employer effectively communicated and enforced safety poli-

cies to protect against the hazard permits an inference that the employer justifiably relied on its employees to comply with the applicable safety rules and that violations of these safety policies were not foreseeable or preventable. Thus, in *Austin,* the Tenth Circuit was aligned with the majority of courts in holding that unpreventable employee misconduct was a defense available to the employer to disprove the alleged violation.

trench despite Mr. Austin's instruction to stay out of the trench until protective equipment was in place. Three Sons contends the Commission presented no evidence showing that the violation was foreseeable. Given the absence of evidence that the violation was foreseeable, Three Sons asserts, the hearing examiner's ruling amounts to the imposition of strict liability, a result not intended by the OSHA statutes. WOSHA responds that evidence was presented showing the violation was foreseeable.

[¶ 24] Most courts that have addressed the issue have concluded it is not enough for the government to prove the violation. In order to make the *prima facie* showing necessary to satisfy its burden of proof, the government must prove the violation occurred and the employer knew or with reasonable diligence could have known the violation was likely. *New York State Electric*, 88 F.3d at 105. Proof of the employer's actual or constructive knowledge of the violation is essential to the government's *prima facie* case. *Id.* Constructive knowledge may be shown by evidence that the employer failed to establish an adequate safety program promoting compliance with safety standards. *Id.* at 105–06.

[¶ 25] At the hearing, WOSHA presented Mr. Bulkley's testimony that he saw three men in the trench performing various types of work around what appeared to be a water line. He also testified that he asked the men if they had been trained, they responded that they had not been, and when he asked them who told them to go into the trench, they pointed to Mr. English. Mr. Bulkley asked Mr. English if he told the men to go into the ditch and he denied having done so. Mr. Bulkley spoke with the three employees again and they recanted what they had said earlier and indicated they had gone into the trench on their own volition because they did not want it to appear that they were not working. Mr. Bulkley then spoke to Mr. Austin, the supervisor on the job, who stated the men were new hires and had not been trained on trench safety prior to being moved over to the trench to assist with installing saddles on the water lines in the trench.

[¶ 26] WOSHA also presented the testimony of WOSHA compliance supervisor, Johnnie Hall. He testified that he asked Three Sons for documentation showing that the employees in the trench had been instructed on the rules concerning trench safety. Three Sons provided no such documentation. Mr. Hall also testified he reviewed documentation provided by Three Sons concerning safety meetings and it indicated only one of the three employees in the trench had attended any safety meetings and he had attended only one such meeting. Mr. Hall also testified that he reviewed documentation showing that the day after the WOSHA inspection Three Sons reprimanded Mr. English for allowing three members of his crew to enter the trench without adequate protections in place.

[¶ 27] This testimony alone was enough to establish a *prima facie* case that the violation was foreseeable because of inadequacies in safety precautions, employee training and supervision. The evidence was undisputed that two of the three employees observed in the trench had not received excavation safety training and that only one of the employees had received any safety training at all. It was also undisputed that Mr. English received a written warning the day after the inspection for allowing three employees from his crew to enter the unprotected trench. Although Three Sons presented evidence that Mr. English had no supervisory authority over the employees and did not instruct them to enter the trench, the hearing examiner was entitled to weigh the evidence and make findings and conclusions based upon what she deemed the more credible evidence. Given that the evidence supports the conclusion that Three Sons knew, or with the exercise of reasonable care could have known, that a violation was likely, the hearing examiner's failure to specify that element of the state's burden in her written order does not give rise to reversible error.

### 3. Sufficiency of the Evidence of Employee Misconduct

[¶ 28] In its final issue, Three Sons claims that it established the affirmative defense of employee misconduct and the rulings

of the hearing examiner and district court to the contrary were arbitrary and not supported by the evidence. In support of its claim, Three Sons cites cases holding that an employer cannot foresee that an employee would violate a direct order and that intentional employee misconduct cannot form the basis of a citation. *Horne Plumbing & Heating Co. v. OSHRC,* 528 F.2d 564 (5th Cir.1976); *Brennan v. OSHRC,* 501 F.2d 1196 (7th Cir.1974).

[¶ 29] The following quotation from *Horne,* 528 F.2d at 569, clearly demonstrates that it is distinguishable from the present case:

> In the instant case, it is undisputed that Horne had an excellent safety program. A safety expert who had examined the company's program testified that it "far exceeds" that of similar companies, and the administrative law judge found on undisputed evidence that "Mr. Horne was diligent in providing for the safety of his employees...." The record shows that *Mr. Horne took virtually every conceivable precaution to ensure that his employees were aware of and understood the requirements of the Act and that they conducted themselves in accordance therewith.* In fact, Mr. Horne's undisputed testimony shows that for many years prior to the passage of the Act, he had been actively engaged in efforts to provide safe working conditions; and that prior to the May 19 accident his company had an excellent record of almost twenty years without a lost-time accident. On the facts of this case, *it is readily apparent that Mr. Horne did everything within his power to ensure compliance with the law, short of remaining at the job site and directing the operations himself.* The question then becomes whether this final effort was required.

(emphasis added).

[¶ 30] In contrast, the evidence in the present case indicated that Mr. Austin, Three Sons' principal supervisor on the job site, knew the employees "had never seen a trench box or a ladder in their life. When they laid pipe out on the reservation, I soon found out they never—they never used any safety means." Despite its knowledge that the employees knew nothing about trench safety, working around trenches or safety in general, Three Sons took no precautions to ensure that these employees were aware of and understood the requirements of the OSHA excavation safety standards or that they conducted themselves in accordance with them. Unlike Mr. Horne, Three Sons did not do everything in its power to ensure compliance with the law. Rather, without providing any training in excavation safety to ensure these newly hired employees were aware of and understood the OSHA requirements and conducted themselves accordingly, Three Sons allowed them to begin work above a trench that was over seven feet deep without supervision with the ultimate intent of having them work in the trench. Other than the testimony that Mr. Austin instructed them not to enter the trench, the significance of which was brought into question by the evidence that Mr. English allowed the three members of his crew to enter the trench, there was no evidence Three Sons did anything to ensure compliance with the law.

[¶ 31] *Brennan,* 501 F.2d 1196, is also distinguishable from the case before us. In *Brennan,* an employee was killed when he took it upon himself to cut the band holding railroad ties in place on the back of a transport truck. The labor secretary contended the violation was foreseeable because the employee was inexperienced and untrained and had been asked to be present at the place of unloading. The Commission rejected the claim primarily on the basis that the employee was not assigned to assist in the unloading process. In concluding the violation was not foreseeable under those circumstances, the Court stated:

> Where an employee is directly participating in a job, the employer may well, as the Commission noted, have a duty under the Act to instruct him on the safe procedure for handling the job. On the other hand, the Commission accurately recognized that training may be unnecessary for an employee who is wholly disassociated with the

operation in question and who would not be foreseeably exposed to danger

*Id.* at 1200.

[¶ 32] In contrast to the employee in *Brennan,* the employees in the present case were at the excavation site specifically for the purpose of performing work in and around the trench. They were not, therefore, "wholly disassociated with the operation in question" as the employee in *Brennan* was and it was foreseeable that they would be exposed to the dangers associated with excavation work. It was undisputed that they had no experience or training in excavation work and no one communicated any safety rules to them before leaving them to begin work around the trench. Given these facts, substantial evidence supported the district court's order affirming the hearing examiner and the order was not arbitrary.

[¶ 33] Affirmed.